# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| JAY BRINSON, *et al.*, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | )    Cause No. _____ |
| | ) |
| KANSAS CITY SOUTHERN<br>RAILWAY COMPANY, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

## **DEFENDANT SPERRY RAIL, INC.'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant Sperry Rail, Inc. ("Sperry") by counsel, hereby removes this action from the 128th Judicial District (Orange County District Court) in Orange County, Texas, to the United States District Court for the Eastern District of Texas, Beaumont Division. In support of this Notice of Removal, Sperry states as follows:

**I.  Introduction And Relevant Background.**

1. On August 19, 2021, Plaintiffs initiated this putative class action against Sperry by filing an Amended Class Action Petition ("Amended Petition") in the 128th Judicial District (Orange County District Court) in Orange County, Texas.[1] That action is captioned *Jay Brinson, et al. vs. Kansas City Southern Railway Company, et al.*, Cause No. A200964-C (the "State Court Action").

2. On August 23, 2021, Plaintiffs served Sperry with a copy of the summons and Amended Petition through Sperry's registered agent.

3. Removal is both timely and properly filed by Sperry because this Notice is filed within thirty days of service. *See* 28 U.S.C. §§ 1446, 1453.

---

[1] The 128th Judicial District is located at 801 W. Division Ave., Orange, Texas 77630.

4. Venue is also proper in the United States District Court for the Eastern District of Texas, Beaumont Division, because the 128th Judicial District (Orange County District Court) is located within this District and Division. *See* 28 U.S.C. § 1441(a).

5. Plaintiffs assert negligence, gross negligence, negligence *per se*, and vicarious liability claims against Kansas City Southern Railway Company ("Kansas City Southern") and Sperry arising from a train derailment that occurred on October 29, 2020 near Mauriceville, Texas. (*See* Am. Pet. ¶¶ 1, 27-44.) Plaintiffs allege that they suffered lost income, business interruption damages, personal property damages, and economic losses resulting from the forced evacuation following the derailment "resulting contamination and release of hazardous chemicals," and ensuing power outage. (*Id.* ¶¶ 2-4, 21, 28.) Plaintiffs further seek punitive damages. (*Id.* ¶¶ 36, 45.)

6. By removing the State Court Action to this Court, Sperry does not admit any of the facts alleged in the Amended Petition, or waive any defenses, objections, or motions available to it under state or federal law. Sperry expressly reserves the right to challenge the adequacy of the allegations in the Amended Petition. *See Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (explaining that after removal, the federal court "takes the case up where the State court left it off . . ." (citation omitted)).

## II. Removal Is Appropriate Under The Class Action Fairness Act.

7. The Class Action Fairness Act of 2005 ("CAFA") "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. §§1332(d)(2), (5)(B)). This action satisfies each of those requirements.

A.  **Commencement.**

8.  Plaintiffs commenced this action against Sperry on August 19, 2021 and long after CAFA's effective date. (*See* Am. Pet.) Accordingly, CAFA applies to this action. *See* 28 U.S.C. § 1332 amendment notes.

B.  **Minimal Diversity Of Citizenship Exists.**

9.  CAFA requires only minimal diversity—that "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2)(A).

10. The Amended Petition alleges that Plaintiffs are "persons" who reside in Orange County, Texas and Jasper, Texas. (*See* Am. Pet. ¶¶ 1-4.) The Amended Petition also defines the putative class as "persons, firms, and/or legal entities . . . residing, maintaining a place of business, owning property, or employed within one mile" of the October 29, 2020 train derailment "in or near Mauriceville, Orange County, Texas." (*Id.* ¶ 17.) Therefore, Plaintiffs and members of the putative class are citizens of Texas. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) (stating that a person is considered a citizen of the state in which he or she is domiciled).

11. Kansas City Southern is a corporation organized under the laws of the state of Delaware and with its principal place of business in Kansas City, Missouri. Therefore, Kansas City Southern is a citizen of Delaware and Missouri. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 (5th Cir. 2001) (noting that a corporation "is a citizen of two states: its state of incorporation, and the state of its principal place of business").

12. Defendant Sperry is a corporation organized under the laws of the state of Delaware and with its principal place of business in Shelton, Connecticut. Therefore, Sperry is a citizen of Delaware and Connecticut, and no Defendant is a citizen of Texas. *See* 28 U.S.C. § 1332(d)(4)(A)(II).

13. Accordingly, because Plaintiffs and members of the alleged putative class are citizens of a state different from Defendants, minimal diversity exists. *See id.* § 1332(d)(2)(A).

**C.     Numerosity.**

14. CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100. *Id.* § 1332(d)(5)(B). This requirement is satisfied by the alleged putative class.

15. The Amended Petition alleges that "[t]he precise size of the class is unknown to Plaintiffs at this time, but upon information and belief, based on information from the Orange County Emergency Management Office, the . . . derailment affected at least 600 individuals, who are likely members of the proposed Class." (Am. Pet. ¶ 19.) The Amended Petition also alleges that "1,000 people were initially evacuated," and that the derailment left "some 2,400 residents" without power. (*Id.* ¶ 15.) Elsewhere, the Amended Petition alleges that "at least 600 putative class members . . . were business owners and sustained business losses during the duration of the subject mandatory evacuation and stay in place orders." (*Id.* ¶ 21.) Accordingly, allegations contained in the Amended Petition satisfy CAFA's numerosity requirement. *See* 28 U.S.C. § 1332(d)(5)(B).

**D.     At Least $5,000,000 Is In Controversy.**

16. CAFA requires that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(2). It further provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(6).

17. Plaintiffs attempted to allege that their damages claims fall under this amount by stating:

> [T]he total amount in controversy in the present action is below $5,000,000; even in the unlikely event that the at least 600 putative class members all sustained all three types of economic losses typical in the present case (business losses, lost income and lodging/evacuation expenses), the total amount in controversy would nonetheless still be well below $5,000,000. As such, removal of this action to federal court, under the Class Action Fairness Act, would be improper.

(Am. Pet. ¶ 21 n.2.) The United States Supreme Court has clarified, however, that a plaintiff may not avoid CAFA jurisdiction by stipulating that the class will not seek more than $5,000,000. Indeed, that type of stipulation does not bind absent class members. *See Knowles*, 568 U.S. at 593 (emphasizing that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified" (citation omitted)). It follows that the Court should ignore Plaintiffs' stipulation and aggregate the putative classes' claims. *See id.* at 1350 (stating that "the District Court, when following the statute to aggregate the proposed class members' claims, should have ignored that stipulation").

18. Moreover, because the Amended Petition also fails to allege a precise amount in controversy, Sperry may do so. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." (citing 28 U.S.C. § 1446(c)(2)(A))). "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold . . . and this allegation should be accepted when not contested by the plaintiff or questioned by the court." *Carter v. Westlex Corp.*, 643 F. App'x 371, 375 (5th Cir. 2016) (quoting *Dart*, 574 U.S. at 89) (internal quotation marks omitted); *see also* 28 U.S.C. § 1446(a). If the plaintiff contests the defendant's allegation, however, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (quoting *Dart*, 574 U.S. at 87-88); *see also* 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval . . . is proper on the basis of an amount in controversy asserted [by the

5

defendant] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional threshold].").

19. Stated another way, where a petition does not specify the amount of damages sought, the

> removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands . . . . The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks. Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.

*Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (emphasis in original; citation omitted). This is because CAFA's jurisdictional amount "is a pleading requirement, not a demand for proof." *Id.* (citation omitted). And "[o]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint." *ABS Ins., Ltd. v. Nat'l Union Fire Ins. Co.*, 51 F. Supp. 2d 762, 772 (E.D. Tex. 1999) (finding that the amount in controversy exceeded the jurisdictional amount and denying the plaintiff's motion for remand) (citation omitted).

20. Here, while Sperry disputes Plaintiffs' allegations of liability and damages, the Amended Petition allegedly seeks relief in excess of $5,000,000, exclusive of interest and costs. *See, e.g.*, *In re Train Derailment Near Amite, LA*, No. Civ. A, MDL No. 1531, 2006 WL 1561470, at *25 (E.D. La. May 24, 2006) (approving $8.275 million settlement of property damage, economic damage and environmental contamination claims relating to train derailment and resulting chemical release); *see also In re Train Derailment Near Amite, LA*, No. MDL No. 1531, 2004 WL 32915, at *3 (E.D. La. Jan. 6, 2004) (denying remand motion and finding that a single

plaintiffs' claims likely exceeded $75,000 on claims of property damage and lost business in connection with train derailment and chemical release).

21. Plaintiff Jay Brinson's damages claims alone demonstrate that Plaintiffs have alleged damages that exceed $5,000,000. In particular, the Amended Petition alleges that Mr. Brinson "sustained between $4,500.00 and $5,000.00 in business losses due to the forced closure of his auto repair shop during the duration of the subject mandatory evacuation and stay in place orders." (Am. Pet. ¶ 21.) It goes on to state that "[u]pon information and belief, Plaintiff Brinson's business loss damages are typical of the damages sustained by any of the *at least* 600 putative class members that were business owners and sustained business losses during the duration of the subject mandatory evacuation and stay in place orders." (*Id.* ¶ 21 (emphasis added).) Based on those allegations alone, at least 600 business owners and putative class members allegedly suffered anywhere from $2,700,000 to $3,000,000 in business losses.[2]

22. In addition to at least $2,700,000 to $3,000,000 in purported business losses, the Amended Petition alleges that Plaintiffs and the putative class members suffered "evacuation/lodging expenses and spoiled food damages." (*Id.*) Indeed, the Amended Petition alleges that Plaintiff Scott Lawson "sustained approximately $160.00 in evacuation/lodging expenses as well as some $150.00 in spoiled food (due to the power outage caused by the train derailment)." (*Id.*) The Amended Petition later states that "[u]pon information and belief, Plaintiff Lawson's evacuation/lodging expenses and spoiled food damages are typical of the damages sustained by any of the at least 600 putative class members that resided within the mandatory evacuation zone." (*Id.*)

---

[2] $4,500 multiplied by 600 equals $2,700,000; $5,000 multiplied by 600 equals $3,000,000.

7

23.     Because Plaintiffs allege that at least 600 putative class members suffered $310 in evacuation/lodging expenses, as well as spoiled food costs ($160 in evacuation/lodging expenses plus $150 in spoiled food expenses), the minimum amount of these alleged damages is $186,000. At the same time, however, the Amended Petition alleges that "1,000 people were initially evacuated," and that the derailment left "some 2,400 residents" without power. (*Id.* ¶ 15.) Consequently, the $186,000 in alleged damages for evacuation, lodging, and spoiled food expenses is less than the alleged actual damages sustained by the putative class members under Plaintiffs' own assertions.

24.     If 1,000 putative class members sustained $160 in evacuation and lodging expenses, those 1,000 individuals would have sustained $160,000 in alleged damages. Additionally, if 2,400 residents suffered $150 in food spoilage and other damages related to being without power, those 2,400 residents suffered $360,000 in alleged damages. Therefore, the putative class allegedly suffered anywhere between $186,000 and $520,000 ($160,000 plus $360,000) in evacuation, lodging, and power outage related damages.

25.     Over and above compensatory relief, the Amended Petition seeks "[e]xemplary and punitive damages." (*Id.* ¶ 45(5).) Texas law permits the recovery of such damages that result from fraud, malice, or—as alleged in this case—gross negligence. *See* Tex. Civ. Prac. & Rem. § 41.003(a) (specifying the standard for the recovery of exemplary damages). It follows that the Court may also consider punitive damages for purposes of determining the amount in controversy. *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1021 (5th Cir. 1992) ("[W]hen a claim includes compensatory and punitive damages, both must be considered in determining the amount in controversy.").

26. Texas law limits the recovery of punitive damages to the *greater* of: "(1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000." *See* Tex. Civ. Prac. & Rem. § 41.008.

27. Here, the Amended Petition alleges that Plaintiffs' and the putative class members' injuries were caused by the grossly negligent actions of "Defendant [Kansas City Southern] and Defendant Sperry." (Am. Pet. ¶ 34.) The Amended Petition specifically alleges that "Defendants were aware of the risks involved in transporting hazardous chemicals while operating its railway tracks and trains in a negligent manner, and nonetheless proceeded with conscious indifference to the rights, safety and welfare of others, including Plaintiffs and the [putative] Class Members." (*Id.*) This purported "grossly negligent conduct" allegedly caused Plaintiffs and the putative class members suffer injuries and, according the Amended Petition, entitles them to recover "exemplary damages in an amount to be determined by the trier of fact." (*Id.* ¶ 35.)

28. Because the Amended Petition alleges at least $2,700,000 in economic damages, plus punitive damages of at least two times that amount, both the claimed and potential amount in controversy exceeds $5,000,000. As a result, Plaintiffs' damages allegations satisfy 28 U.S.C. § 1332(d)(2).

29. Accordingly, because the requirements of CAFA have been met here, Sperry is entitled to removal under CAFA.

### III. Removal Is Also Appropriate Given The Federal Questions Raised By Plaintiffs' Amended Petition.

30. In addition to removal of the State Court Action being proper under CAFA, removal is also proper because Plaintiffs' claims arise under federal law.

31. The Supreme Court recognizes that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v.*

*Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under *Grable,* a federal court may exercise federal question jurisdiction over a state law claim where: (1) the "state-law claim necessarily raise[s] a stated federal issue"; (2) the federal issue is "actually disputed and substantial"; and (3) the exercise of federal jurisdiction will not "disturb [] any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314. In their Amended Petition, Plaintiffs assert state tort claims that necessarily rely upon alleged violations of federal law and/or regulatory schemes. The Amended Petition, therefore, presents "an important issue of federal law that sensibly belongs in a federal court," *Grable*, 545 U.S. at 315, and removal is appropriate pursuant to 28 U.S.C. § 1331.

32. Plaintiffs allege that federal law governed work performed by Sperry on railway tracks owned by Kansas City Southern. According to the Amended Petition,

> [Kansas City Southern] contracted with Sperry for Sperry to perform ultrasonic rail testing services to identify all rail flaws and defects on [Kansas City Southern] trackage. Less than twenty-four (24) hours prior to the Incident that forms the basis of this lawsuit, Sperry used its equipment to perform rail testing services for [Kansas City Southern] in the exact area where the derailment occurred.

(Am. Pet. ¶ 13.)

33. The Amended Petition further alleges that "[Kansas City Southern's] and Sperry's conduct with regard to the inspection, maintenance, repair and/or operation of the railway, railcars, railroad tracks and attending instrumentalities is governed by numerous state and *federal* laws, and permits issued under the authority of these laws." (*Id.* ¶ 38 (emphasis added).) According to Plaintiffs, "these laws and permits create statutory standards that are intended to protect and benefit Plaintiffs and the [putative] Class Members." (*Id.* ¶ 39.)

34. Plaintiffs allege that "Defendants' violations of these [state and federal] statutory standards constitute negligence *per se* under applicable law." (*Id.* at ¶ 41.) In this way, Plaintiffs

expressly base their negligence *per se* claim on Kansas City Southern's and Sperry's alleged violation of federal "laws[] and permits issued under the authority of these laws." (*Id.* ¶ 38.)

35. While Plaintiffs fail to specify any federal rail safety regulation that Sperry allegedly violated, they premise each of their state tort claims on generalized allegations that Sperry (and Kansas City Southern) failed to "operate, maintain, inspect, and repair trains and the railroad tracks." (*Id.* ¶¶ 29, 33; *see also id.* ¶¶ 30, 38, 42.) Moreover, Congress exclusively regulates railroads through the Commerce Clause through multiple regulatory schemes. *See, e.g.*, *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 490, 510 (1989). These regulatory schemes include the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 *et seq.*, and the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101 *et seq.*

36. Under their own allegations, then, Plaintiffs have asserted a claim that requires them to prove that Kansas City Southern and Sperry violated federal law. Thus, Plaintiffs asserted a cause of action where violation of federal law is "an essential element" of the claim. *Grable*, 545 U.S. at 315. Plaintiffs have therefore asserted a claim "arising under" federal law and this Court may exercise federal subject matter jurisdiction over this dispute as a result. *Id.*

## IV. Additional Removal Requirements Have Been Met.

37. Pursuant to 28 U.S.C. § 1446(a) and Local Rule CV-38(b), copies of all pleadings and orders filed in the State Court Action are attached as **Exhibit A**.

38. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a notice of this removal with the 128th Judicial District (Orange County District Court), and a copy of the notice will be served on Plaintiffs.

39. Pursuant to 28 U.S.C. § 1453(b), Sperry may remove the State Court Action without the consent of Kansas City Southern.

40. Furthermore, Sperry has not participated in any discovery in this litigation, nor has it participated in any substantive proceedings.

41. In sum, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Minimal diversity exists between the parties, potential class members total in excess of 100 members, and the amount in controversy exceeds $5,000,000. Federal question jurisdiction also exists pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1441(a), Sperry may remove the State Court Action from the 128th Judicial District (Orange County District Court) in Orange County, Texas, to the United States District Court for the Eastern District of Texas, Beaumont Division.

**V.   Conclusion.**

WHEREFORE, Defendant hereby removes the above-described action now pending in the 128th Judicial District (Orange County District Court) in Orange County, Texas, to the United States District Court for the Eastern District of Texas, Beaumont Division.

Dated: September 22, 2021

Respectfully submitted,

SPERRY RAIL, INC.

*/s/ Miles O. Indest*_____
Miles O. Indest
***Lead Attorney***
McGuireWoods LLP
Texas Bar No. 24101952
mindest@mcguirewoods.com
600 Travis Street, Suite 7500
Houston, Texas 77002
Phone: (832) 255-6361
Facsimile: (832) 214-9931

ATTORNEYS FOR DEFENDANT,
SPERRY RAIL, INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically this 22nd day of September, 2021. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

> Brent W. Coon
> Texas Bar No. 04769750
> Brent@bcoonlaw.com
> Sidney Robert
> Texas Bar No. 24074968
> Sidney.Robert@bcoonlaw.com
> 300 Fannin St., Suite 200
> Houston, Texas 77002
> Phone: (713) 225-1682
> Facsimile: (713) 225-1785
>
> John R. Fabry
> Texas Bar No. 06768480
> JFabry@carlsonattorneys.com
> 1717 N. Interstate 35, Suite 305
> Round Rock, Texas 78664
> Phone: (512) 671-7277
> Facsimile: (512) 238-0275

By: */s/ Miles O. Indest*
    Miles O. Indest